POMERANTZ LLP
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com

*Attorney for Plaintiff*

- additional counsel on signature page -

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LINDA DUNDAS, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION COMPLAINT</u> |
| v. | <u>JURY TRIAL DEMANDED</u> |
| INTERNATIONAL GAME TECHNOLOGY PLC, VINCENT SADUSKY, MARCO SALA, MASSIMILIANO CHIARA, TIMOTHY M. RISHTON, and ALBERTO FORNARO, | |
| Defendants. | |

Plaintiff Linda Dundas ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding International Game Technology PLC ("IGT" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.       This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired IGT securities between March 16, 2018 and August 29, 2022, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.     IGT describes itself as "a global leader in gaming that delivers entertaining and responsible gaming experiences for players across all channels and regulated segments, from gaming machines and lotteries to sports betting and digital."

3.     In June 2017, IGT completed the sale of DoubleDown Interactive LLC ("DDI"), the operator of an online casino called DoubleDown Casino, to DoubleU Diamond LLC ("DoubleU").

4.     Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.   Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IGT overstated its compliance with gaming and lottery laws and applicable regulations; (ii) IGT and/or one or more of its current and/or former subsidiaries engaged in illegal gambling operations; (iii) the foregoing conduct subjected the Company and/or its current and/or former subsidiaries to a heightened risk of litigation and significant related costs; (iv) the Company downplayed the full scope and severity of its financial exposure to, and/or liabilities in connection with, the Benson Action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

5.     On April 9, 2018, a putative class action was filed in federal court against DDI and a wholly-owned subsidiary of the Company called International Game Technology ("IGT Subsidiary"), styled *Benson v. Double Down Interactive, LLC et al.*, No. 2:18-cv-00525 (W.D. Wash.) (the "Benson Action").  The Benson Action alleges, among other things, that IGT Subsidiary and DDI illegally profited from tens of thousands of consumers in violation of Washington law in connection with their operation of DoubleDown Casino.

6.     On May 10, 2018, DDI and DoubleU sent a claim notice (the "DDI Claim Notice") to IGT Subsidiary seeking indemnification and reimbursement of defense costs for all claims against DoubleU and its affiliates in the Benson Action pursuant to the terms of certain agreements with DoubleU.

7.     On August 29, 2022, IGT and DDI issued a joint press release "announc[ing] an agreement in principle to settle the *Benson v. DoubleDown Interactive LLC, et. al.* lawsuit and associated proceedings (the 'Benson Matters')."  The press release stated that, pursuant to the settlement, "[a] total of $415 million will be paid into a settlement fund of which IGT's subsidiaries will contribute $269.75 million" and that "[a]s a result of the settlement agreement, IGT will accrue a $119.75 million non-operating expense in the third quarter related to the incremental loss associated with the Benson Matters and related claims between

IGT and DoubleDown and their respective subsidiaries and affiliates ($150 million was accrued in the second quarter)."

8.     On this news, IGT's ordinary share price fell $0.46 per share, or 2.45%, to close at $18.28 per share on August 30, 2022.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

12.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Pursuant to IGT's most recent annual report on Form 20-F, as of the close of December 31, 2021, there were 203,688,118 of the Company's ordinary shares outstanding.  IGT's ordinary shares trade on the New York Stock Exchange ("NYSE").  Accordingly, there are presumably hundreds, if not thousands, of investors in IGT's ordinary shares located within the U.S., some of whom undoubtedly reside in this Judicial District.

13.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

14.     Plaintiff, as set forth in the attached Certification, acquired IGT securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15.     Defendant IGT is organized under the laws of England and Wales with principal executive offices located at 66 Seymour Street, Second Floor, London, W1H 5BT, United Kingdom.  IGT's ordinary shares trade in an efficient market on the NYSE under the ticker symbol "IGT".

16.     Defendant Vincent Sadusky ("Sadusky") has served as IGT's Chief Executive Officer ("CEO") since January 24, 2022.

17.     Defendant Marco Sala ("Sala") served as IGT's CEO from before the start of the Class Period to January 24, 2022.   Defendant Sala has thereafter served as IGT's Executive Chair.

18.     Defendant Massimiliano Chiara ("Chiara") has served as IGT's Chief Financial Officer ("CFO") since April 6, 2020.

19.     Defendant Timothy M. Rishton ("Rishton") served as IGT's Interim CFO from February 1, 2020 to April 6, 2020.

20.     Defendant Alberto Fornaro ("Fornaro") served as IGT's CFO from before the start of the Class Period to January 31, 2020.

21.     Defendants Sadusky, Sala, Chiara, Rishton, and Fornaro are sometimes referred to herein as the "Individual Defendants."

22.     The Individual Defendants possessed the power and authority to control the contents of IGT's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of IGT's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.   Because of their positions with IGT, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.   The Individual Defendants are liable for the false statements and omissions pleaded herein.

23.     IGT and the Individual Defendants are collectively referred to herein as "Defendants."

6

## SUBSTANTIVE ALLEGATIONS

### Background

24.    IGT describes itself as "a global leader in gaming that delivers entertaining and responsible gaming experiences for players across all channels and regulated segments, from gaming machines and lotteries to sports betting and digital."

25.    In June 2017, IGT completed the sale of DDI, the operator of an online casino called DoubleDown Casino, to DoubleU.

26.    According to the Benson Action's Second Amended Class Action Complaint (Dkt. No. 249), the DoubleDown Casino operated as follows:

> 3.    Defendants provide a bundle of free "chips" to first-time visitors of Double Down Casino that can be used to wager on games within Double Down Casino. After consumers inevitably lose their initial allotment of chips, Defendants attempt to sell them additional chips for real money. Without chips, consumers cannot play the gambling game.

> 4.    Freshly topped off with additional chips, consumers wager to win more chips. The chips won by consumers playing Defendants' games of chance are identical to the chips that Defendants sell. Thus, by wagering chips that have been purchased for real money, consumers have the chance to win additional chips that they would otherwise have to purchase.

### Materially False and Misleading Statements Issued During the Class Period

27.    The Class Period begins on March 16, 2018, the day after IGT filed an annual report on Form 20-F with the SEC during after-market hours, reporting the Company's financial and operational results for the quarter and year ended

December 31, 2017 (the "2017 20-F"). With respect to IGT's purported compliance

with gaming and lottery laws and applicable regulations, the 2017 20-F stated, *inter*

*alia*:

> The Company's lottery operations have been certified for compliance with the WLA Associate Member CSR Standards and Certification Framework. In February 2017, the Company achieved Internet Responsible Gambling Compliance Assessment Program ("iCAP") re-certification. Also in 2017, the Company became the first gaming supplier to achieve responsible gaming accreditation for its land-based casino and lottery segments from the Global Gambling Guidance Group. The certifications awarded to the Company by the most important industry associations worldwide are testimony to the Company's commitment to responsible gaming with the goal to create value for all our stakeholders.

> \* \* \*

> The Company holds over 450 gaming licenses across approximately 340 jurisdictions. Key regulatory authorities which have licensed the Company include, among others, the United Kingdom Gambling Commission, the Nevada State Gaming Control Board and the New Jersey Division of Gaming Enforcement. The Company has never been denied a gaming related license, nor had any of its licenses suspended or revoked.

28.    With respect to IGT's purportedly "robust" compliance program "to

ensure compliance" with gaming and lottery laws and applicable regulations, the

2017 20-F stated, in relevant part:

> The Company has a robust internal compliance program to ensure compliance with applicable requirements imposed in connection with our gaming and lottery activities, as well as legal requirements generally applicable to all publicly traded companies. The Company employs over 120 people to support global compliance which is directed on a day-to-day basis by the Company's Senior Vice President,

Chief Compliance and Risk Management Officer. Legal advice is provided by attorneys from the Company's legal department as well as outside experts. The compliance program, accountable to the Parent's board of directors, is overseen by the Global Compliance Governance Committee, which is comprised of employee and nonemployee directors and a non-employee gaming law expert. Through these efforts, the Company seeks to assure both regulators and investors that all its operations maintain the highest levels of integrity.

29. Similarly, the 2017 20-F represented that "[t]he Company's . . . professional expertise allows lotteries to fully engage their players on any interactive channel in regulated markets."

30. With respect to DoubleDown Casino, the 2017 20-F stated, in relevant part:

Social gaming revenues are generated from the sale of virtual casino chips to players in the online DoubleDown Casino that can be used for additional play or game enhancements. Revenues from player purchases are recognized ratably over the estimated average service period in which the chips are consumed based on historical data analysis. Because DoubleDown is the principal, responsible for substantially all aspects of the casino services and sale of virtual goods to the player, revenues are recorded on a gross basis.

31. Appended as exhibits to the 2017 20-F were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Sala and Fornaro certified that "[t]he [2017 20-F] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "[t]he information contained in the [2017 20-F] fairly presents, in all material respects, the financial condition and results of operations of the Company."

32.    On April 9, 2018, the Benson Action was filed in federal court against IGT Subsidiary and DDI, alleging, among other things, that IGT Subsidiary and DDI illegally profited from tens of thousands of consumers in violation of Washington law in connection with their ownership and operation of DoubleDown Casino, stating, *inter alia*:

> 44.    The state of Washington's "Recovery of money lost at gambling" statute, RCW 4.24.070, provides that "all persons losing money or anything of value at or on any illegal gambling games shall have a cause of action to recover from the dealer or player winning, or from the proprietor for whose benefit such game was played or dealt, or such money or things of value won, the amount of the money or the value of the thing so lost."

> * * *

> 47.    Double Down Casino games are illegal gambling games because they are online games at which players wager things of value (the chips) and by an element of chance (*e.g.*, by spinning an online slot machine) are able to obtain additional entertainment and extend gameplay (by winning additional chips).

33.    On May 10, 2018, DDI and DoubleU sent the DDI Claim Notice to IGT Subsidiary seeking indemnification and reimbursement of defense costs for all claims against DoubleU and its affiliates in the Benson Action pursuant to the terms of certain agreements with DoubleU.

34.    On March 8, 2019, IGT filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2018 (the "2018 20-F").    That filing contained

substantively the same statements as referenced in ¶¶ 27-29, *supra*, regarding IGT's purported compliance with gaming and lottery laws and applicable regulations, robust compliance program "to ensure compliance" with these laws and regulations, and professional expertise in allowing lotteries to fully engage players in regulated markets, thereby downplaying the full scope and severity of IGT's financial exposure to, and/or liabilities in connection with, the Benson Action.

35.     Additionally, the 2018 20-F purported to warn that IGT "***may*** be subject to an unfavorable outcome with respect to . . . [unnamed] legal proceedings, which ***could*** result in substantial monetary damages or other harm to the Company" (emphases added), stating, in relevant part:

> The Company is involved in a number of legal, regulatory, tax, and arbitration proceedings including claims by and against it as well as injunctions by third parties arising out of the ordinary course of its business and is subject to investigations and compliance inquiries related to its ongoing operations. At December 31, 2018, the Company's total provision for litigation risks was $12.0 million. However, it is difficult to estimate accurately the outcome of any proceeding. As such, the amounts of the Company's provision for litigation risks could vary significantly from the amounts the Company may be asked to pay or ultimately pay in any such proceeding. In addition, unfavorable resolution of or significant delay in adjudicating such proceedings could require the Company to pay substantial monetary damages or penalties and/or incur costs that may exceed any provision for litigation risks or, under certain circumstances, cause the termination or revocation of the relevant license or authorization and thereby have a material adverse effect on the Company's results of operations, business, financial condition, or prospects.

Plainly, the foregoing risk warning was a generic, boilerplate provision that was not tailored to IGT's actual known risks specific to the Benson Class Action. The foregoing risk warning further downplayed the severity of any such risks by noting that the Company's provision for litigation risks was a mere "$12.0 million."

36.    Appended as exhibits to the 2018 20-F were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Sala and Fornaro.

37.    On March 3, 2020, IGT filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2019 (the "2019 20-F"). That filing contained substantively the same statements as referenced in ¶¶ 27-29, *supra*, regarding IGT's purported compliance with gaming and lottery laws and applicable regulations, robust compliance program "to ensure compliance" with these laws and regulations, and professional expertise in allowing lotteries to fully engage players in regulated markets, thereby downplaying the full scope and severity of IGT's financial exposure to, and/or liabilities in connection with, the Benson Action.

38.    The 2019 20-F also contained substantively the same generic, boilerplate representations as referenced in ¶ 35, *supra*, purporting to warn that IGT "may" experience an unfavorable outcome in pending, unnamed legal proceedings that "could" result in substantial financial or other harm, which was not tailored to

IGT's actual known risks specific to the Benson Class Action.  The 2019 20-F further downplayed the severity of any such risks by noting that, "[a]t December 31, 2019, provisions for litigation matters amounted to [merely] $15.5 million."

39.    Appended as exhibits to the 2019 20-F were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Sala and Rishton.

40.    On March 2, 2021, IGT filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2020 (the "2020 20-F").   That filing contained substantively the same statements as referenced in ¶¶ 27-29, *supra*, regarding IGT's gaming licenses, robust compliance program "to ensure compliance" with gaming and lottery laws and applicable regulations, and professional expertise in allowing lotteries to fully engage players in regulated markets, thereby downplaying the full scope and severity of IGT's financial exposure to, and/or liabilities in connection with, the Benson Action.

41.    The 2020 20-F also contained substantively the same generic, boilerplate representations as referenced in ¶ 35, *supra*, purporting to warn that IGT "may" experience an unfavorable outcome in pending, unnamed legal proceedings that "could" result in substantial financial or other harm, which was not tailored to IGT's actual known risks specific to the Benson Class Action.  The 2020 20-F further

downplayed the severity of any such risks by noting that, "[a]t December 31, 2020, provisions for litigation matters amounted to [merely] $7.9 million."

42.    Appended as exhibits to the 2020 20-F were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Sala and Chiara.

43.    On March 3, 2022, IGT filed an annual report on Form 20-F with the SEC, reporting the Company's financial and operational results for the quarter and year ended December 31, 2021 (the "2021 20-F").  With respect to the Benson Action—which Defendants finally addressed in the 2021 20-F—the 2021 20-F largely disavowed any wrongdoing or liability on the part of IGT, stating, *inter alia*:

> At all times relevant, [DDI] was the sole operator of the Double Down Casino, and International Game Technology asserts, among other defenses, that it has no liability for the actions of a bona fide subsidiary.

> \* \* \*

> On June 7, 2018, International Game Technology responded to the DDI Claim Notice, rejecting any obligation to indemnify or pay defense costs of the DoubleU Entities, and sent a claim notice to DoubleU Diamond LLC for indemnification and reimbursement of defense costs for all claims against International Game Technology in the Benson matter pursuant to the terms of certain agreements with DoubleU Diamond LLC.

> On June 17, 2021, IGT sent a claim notice to DoubleU Diamond LLC for indemnification and reimbursement of defense costs for all claims against IGT in the Benson matter pursuant to the terms of certain agreements with DoubleU Diamond LLC.

44.    In a similar vein, the 2021 20-F also stated that "International Game Technology filed an answer to [two amended complaints in the Benson Action], continuing to deny all material allegations of liability and damages, and further denying that International Game Technology was responsible for the operation of the Double Down Casino"; that "International Game Technology is vigorously pursuing its defenses"; and that Defendants "are currently unable to estimate the amount or range of reasonably possible loss"; while further downplaying the severity of the Company's litigation risks by noting that, "[a]t December 31, 2021, provisions for litigation matters amounted to [merely] $4 million."

45.    Moreover, the 2021 20-F contained substantively the same statements as referenced in ¶¶ 27-29, *supra*, regarding IGT's gaming licenses, robust compliance program "to ensure compliance" with gaming and lottery laws and applicable regulations, and professional expertise in allowing lotteries to fully engage players in regulated markets, thereby downplaying the full scope and severity of IGT's financial exposure to, and/or liabilities in connection with, the Benson Action.

46.    Appended as exhibits to the 2021 20-F were substantively the same SOX certifications as referenced in ¶ 31, *supra*, signed by Defendants Sadusky, Sala, and Chiara.

47.    On August 2, 2022, IGT issued a press release announcing the

Company's second quarter 2022 results.  That press release stated, in relevant part:

> During the second quarter, the Company recognized a pre-tax non-operating expense of $150 million ($114 million after tax) representing the probable loss associated with ongoing litigation (Benson v. Double Down Interactive LLC, No. 2:18-cv-00525 (W.D. Wash.)) and associated claims related to Double Down Interactive LLC and its social gaming business sold in 2017 by International Game Technology, a wholly-owned subsidiary of the Company[.]

48.    That same day, IGT filed a report of foreign issuer on Form 6-K with

the SEC, stating, in relevant part:

> As a result of ongoing discussions with the parties to the[ Benson Action] matters, including non-binding mediation, the Company has accrued $150 million as an estimated liability representing the current best estimate of probable loss associated with resolution of the Benson Matter and indemnification claims by the DoubleU Entities. The Company will continue to monitor these matters and may adjust its disclosure and accrual in accordance with its Process for Disclosure and Recording of Liabilities Related to Legal Proceedings. Given the nature of these matters being associated with the resolution of the historical disposition of a business, the Company has classified the expense as a non-operating expense in the condensed consolidated statements of operations consistent with the Company's policy related to gains (losses) on the disposition of businesses.

49.    The statements referenced in ¶¶ 27-31 and 34-48 were materially false

and misleading because Defendants made false and/or misleading statements, as

well as failed to disclose material adverse facts about the Company's business,

operations, and compliance policies.  Specifically, Defendants made false and/or

misleading statements and/or failed to disclose that: (i) IGT overstated its

compliance with gaming and lottery laws and applicable regulations; (ii) IGT and/or one or more of its current and/or former subsidiaries engaged in illegal gambling operations; (iii) the foregoing conduct subjected the Company and/or its current and/or former subsidiaries to a heightened risk of litigation and significant related costs; (iv) the Company downplayed the full scope and severity of its financial exposure to, and/or liabilities in connection with, the Benson Action; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

## The Truth Emerges

50.    On August 29, 2022, after the market closed, IGT and DDI issued a joint press release "announc[ing] an agreement in principle to settle the *Benson v. DoubleDown Interactive LLC, et. al.* lawsuit and associated proceedings (the 'Benson Matters')." That press release stated, in relevant part:

> Under the terms of the settlement, which take effect only after final court approval of the proposed class settlement:
>
> - A total of $415 million will be paid into a settlement fund of which IGT's subsidiaries will contribute $269.75 million and DDI will contribute $145.25 million.
>
> * * *
>
> Subject to final court approval of the settlement of the Benson v. DoubleDown Interactive LLC, et. al. lawsuit, IGT and DoubleDown have also resolved all indemnification and other claims between themselves and their respective subsidiaries and affiliates relating to the Benson Matters.

As a result of the settlement agreement, IGT will accrue a $119.75 million non-operating expense in the third quarter related to the incremental loss associated with the Benson Matters and related claims between IGT and DoubleDown and their respective subsidiaries and affiliates ($150 million was accrued in the second quarter).

51.     On this news, IGT's ordinary share price fell $0.46 per share, or 2.45%, to close at $18.28 per share on August 30, 2022.

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired IGT securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, IGT securities were actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at

this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by IGT or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

57.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IGT;

19

- whether the Individual Defendants caused IGT to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of IGT securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

59.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- IGT securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold IGT securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

62.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of IGT securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire IGT securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

65.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for IGT securities. Such reports, filings, releases and statements were materially false and misleading

in that they failed to disclose material adverse information and misrepresented the truth about IGT's finances and business prospects.

66.     By virtue of their positions at IGT, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

67.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of IGT, the Individual Defendants had knowledge of the details of IGT's internal affairs.

68.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of IGT.  As officers and/or directors of a publicly-held

company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to IGT's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of IGT securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning IGT's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired IGT securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

69. During the Class Period, IGT securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of IGT securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of IGT securities was substantially lower than the prices

paid by Plaintiff and the other members of the Class.  The market price of IGT securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

70.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

72.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.    During the Class Period, the Individual Defendants participated in the operation and management of IGT, and conducted and participated, directly and indirectly, in the conduct of IGT's business affairs.  Because of their senior positions, they knew the adverse non-public information about IGT's misstatement of income and expenses and false financial statements.

74.   As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to IGT's financial condition and results of operations, and to correct promptly any public statements issued by IGT which had become materially false or misleading.

75.   Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which IGT disseminated in the marketplace during the Class Period concerning IGT's results of operations.   Throughout the Class Period, the Individual Defendants exercised their power and authority to cause IGT to engage in the wrongful acts complained of herein.   The Individual Defendants, therefore, were "controlling persons" of IGT within the meaning of Section 20(a) of the Exchange Act.   In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of IGT securities.

76.   Each of the Individual Defendants, therefore, acted as a controlling person of IGT.   By reason of their senior management positions and/or being directors of IGT, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, IGT to engage in the unlawful acts and conduct complained of herein.   Each of the Individual Defendants exercised control over the general operations of IGT and possessed the power to control the specific

activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

77.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by IGT.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  October 14, 2022

Respectfully submitted,

POMERANTZ LLP

*/s/ Thomas H. Przybylowski*
Thomas H. Przybylowski
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Attorneys for Plaintiff*

**CERTIFICATION PURSUANT
TO FEDERAL SECURITIES LAWS**

1.     I, _Linda Duedas_, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.     I have reviewed a Complaint against International Game Technology PLC ("IGT") and authorize the filing of a comparable complaint on my behalf.

3.     I did not purchase or acquire IGT securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.     I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired IGT securities during the class period, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.     The attached sheet lists all of my transactions in IGT securities during the Class Period as specified in the Complaint.

6.     During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.     I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed _____10/10/2022_____
                          **(Date)**


                                        _____
                                        **(Signature)**

                                        Linda Dundas
                                        _____
                                        **(Type or Print Name)**

**International Game Technology Plc (IGT)**                                                      **Linda Dundas**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 8/17/2022 | 200 | $21.9500 |